### In re TODD SHIPYARDS CORPORATION, Todd Pacific Shipyards Corporation, Debtors.

**Bankruptcy Nos. 87–5005, 87–5006.**

United States Bankruptcy Court, D. New Jersey.

April 19, 1988.

---

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., Proskauer, Rose, Goetz & Mendelson, New York City, for debtors.

Klinger, Nicolette, Mavroudis & Honig by Richard B. Honig, Oradell, N.J., for Movants William Bradley Chisholm and Thu Chisholm.

Hannoch Weisman by Jack Gillman, Roseland, N.J., for Official Unsecured Creditors Committee.

Berlack, Israels & Liberman, New York City, and Rothbard, Rothbard & Kohn, Newark, N.J., for Noteholders' Committee.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This matter is before the Court upon motion of William Bradley Chisholm and Thu Chisholm (collectively "movants") seeking an order vacating the automatic stay pursuant to 11 U.S.C. § 362 to allow the movants to continue personal injury suits pending in the United States District Court for the Central District of California and in the Superior Court of the State of California against the debtors herein, Todd Shipyards Corp. and Todd Pacific Shipyards Corporation (collectively, "Todd").[1]

The Court has jurisdiction over this "core proceeding" pursuant to 28 U.S.C.

§ 157(b)(2)(G) and 28 U.S.C. 1334. Based upon a hearing before this Court on December 7, 1987, and based upon the papers submitted by the parties, the following constitutes the Court's findings of fact and conclusions of law.

### Findings of Fact

1. Todd filed for bankruptcy under Chapter 11 of the Bankruptcy Code on August 17, 1987, in the United States Bankruptcy Court for the District of New Jersey.

2. Todd, operating as a debtor-in-possession, is a large industrial enterprise in the business of the construction and repair of marine vessels. Said operations are located throughout the United States.

3. William Bradley Chisholm asserts he suffered personal injuries as the result of a fall on November 2, 1984. Said fall occurred on a ship built by Todd. Thus Chisholm is maintaining her action for loss of consortium she suffered due to the disabilities her husband sustained in his fall.

4. The Chisholms commenced a law suit on October 31, 1986 in the United States District Court for the Central District of California (C.V. 86–7119 MRP(Gx)) and in the Superior Court of the State of California for the County of Los Angeles (Docket No. S.O.C. 84909). The state court action was stayed by consent of the parties pending the outcome of the federal tort action.

5. The California action was in the preliminary discovery stage when Todd filed its Chapter 11 petition on August 17, 1987.

### Conclusions of Law

The issue raised by the movants' motion for an order vacating the automatic stay is whether the movants should be permitted to proceed to judgment in the pending California law suit against the debtor for damages arising from alleged negligence.

---

1. By consent of the parties, the California state court suit was stayed pending disposition of the federal suit. Accordingly, this Court is asked to decide the automatic stay issue as it only pertains to the federal court suit.

The automatic stay from which movants seek relief is set forth in 11 U.S.C. § 362(a) which states in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title. . . .

However, relief from the automatic stay is permitted under provisions of 11 U.S.C. § 362(d) which states in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest. (Emphasis added.)

The movants allege that the automatic stay will work a substantial hardship upon them. The stay would cause them to remain uncompensated for their losses, impacting upon their quality of life. Movants also contend that the delay caused by the stay will impede the memories of witnesses to the alleged incident, thereby prejudicing the movants' chances for a successful outcome in the case. Debtor claims that there are approximately 100 law suits pending against them and that many (approximately 65) of the law suits assert claims based upon personal injury or wrongful death and seek damages which, in the aggregate, may prove to be significant. The debtors also contend that if this law suit is allowed to proceed that substantial time and resources of the debtor will be drained in efforts to defend this suit, thus, diverting the attention of the debtor and its management from attempting to proceed towards the confirmation of a plan of reorganization.

██ The Court is aware that the automatic stay is " 'one of the most fundamental debtor protections provided by the bankruptcy laws.' " *Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 503, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986), *quoting,* S.Rep. No. 95–989, p. 54; H.R.Rep. No. 95–595, p. 340 (1977); U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840, 5963, 6296. In deciding whether there is sufficient cause present to lift the stay, the Court must conduct a balancing test whereby the interests of the estate are weighed against the hardships that will be incurred by the movants. *In re Continental Airlines, Inc.,* 61 B.R. 758 (S.D.Tx.1986); *In re Pro Football Weekly, Inc.,* 60 B.R. 824 (N.D.Ill.1986); *In re International Endoscope Manufacturers, Inc.* 79 B.R. 620 (Bankr.E.D.Pa.1987); *In re Ronald Perlstein Enterprises, Inc.,* 70 B.R. 1005 (Bankr.E.D.Pa.1987); *In re Bock Laundry Machine Co.,* 37 B.R. 564 (Bankr.N.D.Ohio 1984); *In re Larkham,* 31 B.R. 273 (Bankr. D.Vt.1983).

In balancing the hardships, 11 U.S.C. § 362(d) must be read in conjunction with 11 U.S.C. § 362(g) since the latter allocates the burden of proof in motions seeking relief from the stay. Section 362(g) provides:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such relief has the burden of proof on all other issues.

Since Todd's equity in property is not at issue, Todd has the burden of proving that there is not cause to lift the stay. *See, In re Munoz,* 83 B.R. 344 (Bankr.E.D.Pa. 1988); *Matter of Rapco Foam, Inc.,* 23 B.R. 692 (Bankr.W.D.Wisc.1982).[2]

**2.** The Court recognizes that Judge Scholl in *In* *re Ronald Perlstein Enterprises, Inc., supra,* de-

As previously stated, the debtor asserts that in defending the movants' law suit it would be forced to divert substantial time, expense and energy from its efforts to reorganize.[3] One of the considerations in this balance is "conserving the resources and energies of the debtor which would be otherwise expended in litigating claims in other forums." *In re International Endoscope Manufacturers, Inc., supra,* at page 622. *See, also, In re Perlstein, supra,* at page 1009; *In re Stranahan Gear Co.,* 67 B.R. 834, 838 (Bankr.E.D.Pa.1986).

■ Judge DeVito, sitting in the United States Bankruptcy Court for the District of New Jersey, has noted that, "[t]he Court of Appeals for the Third Circuit has declared that litigation expenses do not constitute an injury sufficient to justify the enjoining of litigation against a debtor." *Matter of Nkongho,* 59 B.R. 85, 86 (Bankr.D.N.J. 1986), *quoting, Matter of Nicholas,* 55 B.R. 212, 217 (Bankr.D.N.J.1985), *citing, In re Davis,* 691 F.2d 176, 178 (3rd Cir.1982), *quoting, Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971);

*see, also, In re Unioil,* 54 B.R. 192, 195 (Bankr.Colorado 1985); *Matter of McGraw,* 18 B.R. 140 (Bankr.W.D.Wisc.1982).[4]

Considering that there are approximately 65 pending tort actions against Todd, coupled with the fact that Todd is an extremely large corporation, the Court is not convinced that defending the movants' law suit in California would offend the purpose of the automatic stay. Furthermore, "[c]ourts have regarded the opportunity to litigate the issue of liability as a significant right which cannot easily be set aside, even when pre-petition causes of action are involved." *In re Continental Airlines, Inc., supra,* at page 779; *see, also, In re Bock Laundry Machine Co., supra,* at page 567:

> The automatic stay was never intended to preclude a determination of tort liability and the attendant damages. It was merely intended to prevent a prejudicial dissipation of the debtor's *assets.*[5]

Additionally, Congress has recognized that the automatic stay should be lifted in appropriate circumstances:

nied the movant's request for relief from the stay based upon movant's allegations of "widespread fraud." The Court noted that the movant, pursuant to § 362(d) was required to provide the Court with a prima facie case for relief by showing "cause" before shifting the burden of proof to the debtor pursuant to § 362(g)(2). However, it is important to note that the cases which the *Perlstein* Court cited in support of its position involved situations where either: (1) equity in property was at issue and the movant failed to provide such proof of equity, or, (2) situations where unsubstantiated allegations were made in seeking to sue the debtor, and thus, "cause" under § 362(d) was not established.

Additionally, the *Perlstein* Court relied heavily upon *In re Stranahan Gear Co.,* 67 B.R. 834 (Bankr.E.D.Pa.1986) where suit was initiated *after* bankruptcy proceedings had begun. The Court in *Stranahan* stated at page 837 of its opinion that in light of the automatic stay, the action "never should have been filed against the debtor in the first place and is, accordingly, void...."

The Chisholms assert a specific instance of negligence in their moving papers. While Todd counters with various arguments to the contrary, these are issues for the trier of fact to determine in the negligence suit itself. The Court is convinced that the Chisholms have met the burden of proof for a prima facie case for relief, thus shifting the burden of proof to Todd.

3. Todd additionally asserts that granting the movants' relief in this instance would set a precedent, opening the door to approximately 65 other pending law suits.

4. The Court does recognize that there exists cases where the potential litigation expenses would rise to a level justifying the enjoining of litigation against the debtor. However, the circumstances must be extraordinary. *See, In re Johns–Manville Corp.* 45 B.R. 823 (S.D.N.Y.1984) (Law suits enjoined because 25,000 suits would endanger the existence of the debtor.); *In re UNR Industries, Inc.,* 45 B.R. 322 (N.D.Ill.1984) (17,000 claims would drain the estate irreparably); *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986) (5,000 suits pending plus an equal number not filed would consume all the assets of the debtor).

5. *Bock Laundry* involved a debtor-in-possession who was named as a defendant in approximately 43 separate personal injury actions, 32 of which arose at the time when the debtor was self-insured.

While the debtor, Todd, seeks to distinguish *Bock Laundry* because, in that case, the debtor's insurer had the obligation to defend certain of the suits. However, as noted, 32 of those cases involved situations where *Bock Laundry* had to provide its own defense. *See, also, Matter of McGraw, supra; In re Terry,* 12 B.R. 578 (Bankr. E.D.Wisc.1981).

[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

H.R.Rep. 95–595, 95th Cong. 1st Sess. 341 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 50 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5836, 6297.

It is noted that should this Court continue the stay in place, the actual trial of this personal injury tort claim cannot take place in the bankruptcy court. 28 U.S.C. § 157(b)(5) reads:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

The above language is taken from the "Bankruptcy Amendments and Federal Judgeship Act of 1984" referred to in the literature and cases as the BAFJA amendments. Congress, by passing these 1984 amendments to the Bankruptcy Code, was addressing what the Supreme Court had ruled was an overly broad granting of jurisdiction to the bankruptcy courts in the 1979 Code. In writing the majority opinion in *Northern Pipeline Const. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52, 102 S.Ct. 2858, 2861–62, 73 L.Ed.2d 598 (1982), Justice Brennan held that private rights between litigants lie at the heart of "judicial power" granted by the Constitution to Article III courts and that Congress could not abrogate the rights of said private litigants to have their dispute resolved by an Article III jurist. *Marathon, supra*, 102 S.Ct. at page 2870.

Thus, the 1984 amendments of the Bankruptcy Code must be read in the context of Congress responding to the holding in *Marathon*. The congressional history of 28 U.S.C. § 157(b)(5) is explored in the case of *In re White Motor Credit*, 761 F.2d 270 (6th Cir.1985).

■ Wrongful death and personal injury tort claims must be tried in a forum other than this Court. In theory said suits, pursuant to § 157(b)(5), could be tried in the District of New Jersey or in the district court where the claim arose. The motion before the Court seeks to have the suit pending in the California Federal District Court proceed. There is no reason in the record before this Court to deny the request of the claimants.

■ Considering the aforementioned, the court concludes that cause exists to lift the automatic stay to allow the movants to proceed with the California law suit. Since the movants only seek to litigate their claims to the point of judgment and do not seek relief from the stay in order to attach the property of the debtor, such relief does not interfere with the bankruptcy proceedings. If, in the future, a judgment results from the California law suit, the movants shall file with this Court a proof of claim for the amount of the judgment. Furthermore, insofar as Todd is a large corporation with local counsel present throughout the country, Todd's lead bankruptcy counsel located in New York and New Jersey will not be diverted by the personal injury suit to the point of interfering with their efforts to reorganize the debtor. Nor is there anything in the record *sub judice* which indicates that the upper management of Todd critical to reorganization will be diverted in its efforts from reorganizing the debtor. For the within reasons, the stay is vacated, and the California litigation may proceed.